UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BARBARA CAMPBELL<br>        Plaintiff | : | CIVIL ACTION NO.<br>3:03 CV 0520 (JCH) |
| V. | : | |
| WINDHAM COMMUNITY HOSPITAL, INC. | : | |
| HATCH HOSPITAL CORP.<br>        Defendants. | : | JUNE 16, 2004 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR PERMISSION TO TAKE DISCOVERY OUT OF TIME**

A.   INTRODUCTION

Pursuant to Fed.R.Civ.P. 16(b), and Local Rule 16, the plaintiff, Barbara Campbell, (hereinafter "the plaintiff" or "Campbell") respectfully requests that the scheduling order in the above-referenced matter be modified so as to allow the plaintiff to take short depositions of Kathleen Clairmont, Leigh Johnson, Teresa Carey, Shirley Dayton and Teddi Moore.  On information and belief, each of these women is employed by the defendant Windham Memorial Community Hospital (hereinafter "the defendant'" or "the Hospital").  The plaintiff seeks to depose these employees solely as to the complaints and/or criticism each had of the plaintiff and any communication of such criticism to the defendant.  The plaintiff believes that each such deposition should take approximately one hour, and has offered to take the depositions at the defendant's place of business during one business day  to reduce the inconvenience  to the witnesses and to the defendant.

B.   FACTS RELEVANT TO THE MOTION

This case involves the discipline and subsequent termination of Unitarian

Minister Barbara Campbell by the defendant.  The defendant is a non-denominational Hospital that employed the plaintiff as a chaplain.   It is undisputed that she was told to resign or she would be terminated on or about September 4, 2001.

The plaintiff contends that she was discriminated against and terminated by the defendant employer because of her  gender and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and the Connecticut Fair Employment Practices Act, C.G.S. §46a-60 et. seq.   The plaintiff additionally contends that her termination was in violation of  Connecticut public policy.  Specifically, she contends that she was terminated for her conduct in correcting information which she disagreed with in her personnel file, for submitting a written statement disagreeing with her evaluation to be kept in her personnel file, and for opposing religious discrimination in a place of public accommodation.   Finally, the plaintiff contends that she was terminated because of her First Amendment activity in violation of C.G.S. §31-51q.[1]

The defendant has claimed that the plaintiff had serious performance problems that justified extending her probation, and ultimately justified the decision to terminate her.  The defendant has suggested that there were complaints about the plaintiff's demeanor and performance  by patients, physicians, family members and staff members.    At trial the defendant is expected to introduce testimony and other evidence as to these alleged complaints, and the defendant's good faith reliance on

---

[1] Specifically, she contends that she was terminated for  speech related to: (1) the confidentiality of persons receiving counseling; (2) the confidentiality and right to privacy of patients as set out in the Health Insurance Portability and Accountability Act; (3) the right of patients to have their individual spiritual and privacy needs respected as set out in the standards of the Joint Commission on Accommodation of Health Care Organizations; (4) the need for defendant to avoid discrimination on the basis of religion and/or the promotion of any religion or religious group; and (5) the need to protect patients from proselytization.

2

these complaints.

The plaintiff sought detailed information about the alleged complaints during discovery. On or about July 25, 2003, the plaintiff served interrogatories and requests for the production of documents on the defendant, which included several interrogatories related to the alleged complaints.

Interrogatory Number 6 requested that the defendant,

Please identify each and every person known by the defendant to have knowledge of the facts underlying the complaint, the defendant's answer, and/or the defenses to the complaint, including the information believed to be known, the name, address, place of employment, job title and position of each person and please identify all documents which relate to this answer.

Interrogatory Number 8 requested that the defendant,

Please identify and describe in detail each and every written or verbal communication, that the defendant has or has had concerning criticism of the plaintiff's performance or conduct in the workplace, identify all persons who participated in any such communication, the date of each communication, and all documents which relate to this answer.

Interrogatory Number 15 requested that the defendant,

Please describe any complaints or concerns expressed to the defendants about the plaintiff by any staff person, including identifying the staff person, the person complained to, the date of any such communication, and please describe in detail any and all communications, and the details of any investigation by the defendant into the complaint. Please identify any and all documents which relate to this answer, including but not limited to any interview notes and any meeting minutes.

On or about September 15, 2003, the defendant filed objections and responses to these Interrogatories. (Attached hereto as exhibit A) The answers to these interrogatories were verified by Allison Breault, the Vice President of Patient Care Services, one of the decisionmakers with respect to the termination of the plaintiff. In responding to this discovery, the defendant did not report that there had been any

3

complaints to Ms. Breault by staff members Kathleen Clairmont, Leigh Johnson, Teresa Carey, Shirley Dayton or Teddi Moore. In fact, none of these individuals were even identified as being persons with relevant knowledge.

The defendant provided supplemental discovery responses on or about October 10, 2003. (Attached hereto as Exhibit B) These supplemental responses were also verified by Allison Breault. Again the defendant failed to identify any complaints by staff members Kathleen Clairmont, Leigh Johnson, Teresa Carey, Shirley Dayton or Teddi Moore.

On October 15, 2003, the plaintiff took the deposition of Ms. Breault. (Relevant portions of the deposition testimony attached hereto as Exhibit C) Ms. Breault testified that hospital staff had informed her that the plaintiff lacked appropriate personal space with staff and patients, was too assertive, hovered, and inserted herself in discussions or situations that were not relevant. (See Ex. C at 133-140; 148-150) Ms. Breault testified that these staff members had complained to her that they were uncomfortable in contacting the plaintiff. (See Ex. C at 133-140; 148-150) Unfortunately, Ms. Breault testified that she could not recall the identities of the staff members who had allegedly made these complaints. Id.

The defendant filed a second set of supplemental interrogatory responses on or about November 18, 2003. (Attached hereto as Exhibit D) These supplemental responses were verified by Allison Breault. In these responses, the defendant identified Clairmont, Johnson, Carey, Dayton and Moore as persons with relevant information. (Exhibit D at Interrogatory Number 6) However, the defendant did not identify these potential witnesses as the persons who had allegedly complained to Ms. Breault. (Exhibit D at Interrogatory Number 15)

4

On March 12, 2004, the plaintiff served the defendant with a second set of interrogatories.  Interrogatory Number 2 requested that the defendant,

> Please describe any negative comments or complaints made about the Plaintiff's performance or behavior by the following employees and/or medical staff in as detailed a manner as possible, including what was said by each employee, when, to whom, and when the Hospital first became aware of the comment or complaint.  Please provide the address and telephone number of each identified current non-managerial employee, and the last known address and telephone number of each identified former employee.  If the Defendant learned of the comment or complaint from another individual please state whether the Defendant confirmed with the identified employee prior to the Plaintiff's termination that the comment or complaint was, in fact, made.....
> Kathleen Clairmont
> Leigh Johnson
> Teresa Carey
> Shirley Dayton
> Teddi Moore....

On or about April 12, 2004, the defendant filed objections and responses to these interrogatories.  (Attached hereto as exhibit E)   The answers to these interrogatories were verified by Allison Breault.   In responding to interrogatory number 2, the defendant indicated that Clairmont, Johnson, Carey, Dayton and Moore had each had complained to Vincent Stephens and/or to Dawn Noel about, "plaintiff's lack of respect for the personal space of patient's and hospital staff".[2]   In responding to this Interrogatories the defendant did <u>not</u> report that these individuals had complained to Ms. Breault about their reluctance to work with the plaintiff.

Based on the defendant's description of the complaints allegedly made by Clairmont, Johnson, Carey, Dayton and Moore, and because the plaintiff had previously deposed Noel and Stephens about the complaints made to them,  the undersigned

---

[2]   The defendant further  reported that Ms. Moore allegedly informed Noel of an incident where the plaintiff allegedly eavesdropped on a conversation.

counsel decided that it was not necessary to depose these witnesses.[3]    On April 28, 2004, two days before the close of discovery, the plaintiff completed the deposition of Ms. Breault. (Relevant portions of this deposition are attached hereto as Exhibit F) During this deposition, Ms. Breault testified that Clairmont, Johnson, Carey, Dayton and/or Moore had told her that they were uncomfortable with the plaintiff and that they did not want to interact with the plaintiff.  (Ex. F at 310-324)  According to Breault one of these individuals also reported that the plaintiff had touched her. [4] (Ex. F. at 321)

Plaintiff's counsel questioned Ms. Breault as to why this information had not been provided in response to the plaintiff's previous interrogatories- which Ms. Breault had signed.  (Ex. F at 316-319)  Ms. Breault was unable to offer any explanation for this failure. (Ex. F at 316-319)  However, defendant's counsel agreed to supplement their responses. (Id.)

On or about May 27, 2004, after the close of discovery, the defendant provided supplemental responses which indicated that the defendant intended to rely on Breault's testimony that Clairmont, Johnson, Carey, Dayton and/or Moore had complained to her about being uncomfortable with the plaintiff.  (Attached hereto as Exhibit G)  The defendant also reported that these witnesses complained that,

> they did not want to work with the plaintiff or call her to consult with their patients.  In addition at least one of the above employees reported that plaintiff had touched her and had expressed the opinion that plaintiff did not know her well enough to do so.  Breault met with the employees in October 2003, in order to advise them that the Hospital was providing their names to plaintiff's attorney in connection with plaintiff's lawsuit.  During these October 2003 meetings, these employees

---

[3] Had counsel known that these were the witnesses who had allegedly indicated an unwillingness to work with the plaintiff, their depositions would have been taken.

[4]  Ms. Breault was unable to identify the individual who allegedly made this complaint.    (Ex. F. at 321)

6

reiterated    the complaints they had first made about plaintiff in or about July or August 2001.

(See exhibit G)

Based on the new information disclosed in these supplemental responses and the information disclosed by Breault in April,  the undersigned counsel determined that depositions of each witness would need to be taken.   On May 28, 2004, plaintiff's counsel notified defendant's counsel of her desire to take very short depositions of each, and offered to take then all five depositions on one day at the Hospital.   Between May 28, 2004, and June 11, 2004, counsel spoke on several occasions in an attempt to resolve this and several other discovery disputes.   On the afternoon of June 11, 2004, defendant's counsel indicated that he had spoken to his client and that the defendant would not agree to  reopening discovery to take these depositions.   However, on June 14, 2004, in response to a question from plaintiff's counsel, defendant's counsel indicated that the defendant was reserving its  right to present evidence at trial of the alleged complaints of   Clairmont, Johnson, Carey, Dayton and  Moore.

C.    ARGUMENT

Under the Court's scheduling order,  discovery in this case is closed.   However, Federal Rule of Civil Procedure 16(b), and Local Rule 16,  provide that the scheduling order may  be modified, "upon a showing of good cause."    Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, (D.Conn.,1998).   "Good cause" has been defined as meaning that  the schedule cannot reasonably be met despite the moving party's diligence and for reasons that were not foreseeable when the parties submitted the proposed case management plan. Id.   See Also: D. Conn.Loc.R.Civ.P. 16.

A determination of "good cause"  will generally include  consideration of the  past

7

conduct and diligence of the parties, the prior knowledge of the parties, and the nature of the relief sought. Bernstein v. Bernstein, 1993 WL 466402, (E.D.N.Y., 1993)  Since the main purpose of a scheduling order is to enable the Court to manage the conduct and disposition of cases, the Court will also consider the stage of the litigation and whether the granting of the motion would postpone the trial ready date.  Id.   Finally, the Court is to consider whether or not injustice will result from the denial of the motion. D.Conn.Loc.R.Civ.P. 16 (trial ready date will not be disturbed except to prevent manifest injustice).  See Also:   Laguna v. American Export Isbrandtsen Lines, Inc., 439 F.2d 97, (2nd. Cir. 1971), quoting  3 J. Moore, Federal Practice P16.20, at 1136 (3d ed. 1968)(noting that the Court should balance, "the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements").

      The application of these criteria to the facts of the instant litigation makes clear that the plaintiff's motion should be granted.   In this case, the plaintiff has diligently sought information as to the complaints and criticism of staff members;  seeking descriptions of any such criticism as early as July 2003.    It was not until the close of discovery  that Ms. Breault disclosed that one or more of these witnesses might have complained to her about being touched and/or about a reluctance to work with the plaintiff. It was not until after discovery had closed that the defendant formally identified  these witnesses as the individuals who had allegedly informed the defendant that they were unwilling to work with the plaintiff, and who complained about being "touched".   The late disclosure of this information was not foreseeable by the plaintiff, and was clearly not the result of any unreasonable delay or lack of diligence on the part

8

of the plaintiff.[5]  Thus, the plaintiff should have an opportunity to depose these witnesses.

The additional discovery sought by the plaintiff is also narrowly tailored to the issues recently disclosed.  The plaintiff does not seek a general reopening of discovery or additional written discovery.  Instead, plaintiff merely seeks to depose these five witnesses as to their criticism of the plaintiff, and the circumstances surrounding the communication of this criticism to the defendant.  These depositions should be short, and the plaintiff has offered to take all five during one day in order to minimize any delay.  The plaintiff has also offered to take the depositions at the defendant's place of business in order to reduce any inconvenience to the witnesses.

Moreover, permitting the minimal amount of additional discovery sought by plaintiff should in no way affect trial readiness.  The defendant has indicated that it will file a motion for summary judgement as to some or all of the plaintiff's claims.  The plaintiff does not seek to modify the scheduling order with respect to the deadlines for the summary judgement motion.  Accordingly, the trial ready date should not be impacted at all by the granting of this motion.

Finally, the granting of the plaintiff's motion is in the interest of justice.  The defendant will in no way be prejudiced if the depositions are taken.  However, since the defendant has indicated that it will not waive its right to introduce evidence of the

---

[5] The subsequent delay in filing this motion was not the result of any lack of diligence.  Since April 28, 2004, counsel have been trying to resolve several discovery issues, including this one, in hopes that a motion to the Court could be avoided.  This approach was reasonable in that counsel, throughout this litigation, have managed to resolve numerous discovery disputes and scheduling issues.  However, despite good faith attempts the parties were unable to resolve this dispute.  On June 11, 2004, defendant's counsel indicated that he had spoken to his client and that the final determination had been made that these witnesses would not be voluntarily produced.  Plaintiff's counsel began work on this motion on Jule 14, 2004.

9

alleged complaints at trial, denying the plaintiff the opportunity to depose these witnesses prior to the trial could clearly result in prejudice to the plaintiff.    Permitting the defendant to achieve a tactical advantage as a result of its late disclosure is clearly not in the interests of justice.

D.      CONCLUSION

For the reasons set out in this memorandum, the plaintiff respectfully requests that the scheduling order in the above-referenced matter be modified so as to allow the plaintiff to take short depositions of Kathleen Clairmont, Leigh Johnson, Teresa Carey, Shirley Dayton and Teddi Moore limited to any criticism each had of the plaintiff and the circumstances surrounding any communication of this criticism to the defendant.

Respectfully submitted,

THE PLAINTIFF

By: _____
Mary E. Kelly  ct 07419
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT  06105-2922
(860) 233-9821

## **CERTIFICATION OF SERVICE**

      This is to certify that a copy of the foregoing Memorandum In Support of Plaintiff's Motion For Permission to Take Discovery Out of Time has been sent by first-class, postage pre-paid mail on this 16th day of June 2004 to the following counsel of record:

Stephen B. Harris  
William J. Albinger  
Wiggin & Dana LLP  
One Century Tower  
265 Church Street  
New Haven, CT 06510-7001

                                                                                  _____  
                                                                                   Mary E. Kelly