UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA CAMPBELL, ) | |
| ) | Civil No. 3:03 CV 0520 (JCH) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WINDHAM COMMUNITY MEMORIAL ) | June 28, 2004 |
| HOSPITAL, INC. and ) | |
| HATCH HOSPITAL CORP. ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PERMISSION TO TAKE DISCOVERY OUT OF TIME

Defendants Windham Community Memorial Hospital, Inc. ("Hospital") and Hatch Hospital Corporation (collectively "defendants") hereby respectfully submit this memorandum of law in opposition to plaintiff's "Motion for Permission to Take Discovery Out of Time." Plaintiff requests that the Court modify the scheduling order in the above matter in order to permit her to take the depositions of five Hospital employees. The reasons put forth by plaintiff in support of her motion, however, do not constitute good cause for modification of the scheduling order and, thus, her motion should be denied.

As discussed in detail below, as early as November 2003, plaintiff was on notice of the identities of the Hospital employees whose depositions she desires to take as well as the general nature of their concerns regarding plaintiff's job performance. Furthermore, plaintiff was aware that the employees' concerns had been communicated to plaintiff's supervisor and were a factor

in the decision to extend plaintiff's probationary employment period. Thus, plaintiff's failure to depose these employees at an earlier date is not, as plaintiff suggests, the result of any omission or late disclosure by defendants. In addition, the nature of the employees' expected testimony is duplicative of testimony which has already been provided by other witnesses in this case and is not directly relevant to defendants' decision to terminate plaintiff's employment. Accordingly, plaintiff's Motion for Permission to Take Discovery Out of Time should de denied.

## I.   **NATURE OF THE CASE**

Plaintiff has brought suit against her former employer claiming that she was wrongfully discharged from her position as Staff Chaplain. Specifically, she contends that her probationary employment period was extended and she was ultimately forced to resign her position on account of her gender and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60 *et seq.* She further contends that she was terminated in violation of Connecticut public policy, i.e., because she submitted a written statement in response to disputed information contained in her personnel file and because she opposed religious discrimination in a place of public accommodation. Finally, she contends that she was terminated in violation of C.G.S. § 31-51q.

The Hospital maintains that plaintiff's probationary employment period was extended on account of her poor relationships with local and volunteer clergy and Hospital staff, and because of her improper documentation in patient medical records. Plaintiff's performance issues with respect to Hospital staff concern the perception held by several Hospital employees that plaintiff did not respect their "personal space." The Hospital further maintains that after plaintiff's probationary employment period was extended, several additional performance issues arose which justified plaintiff's termination. These issues included: (1) the content of plaintiff's

written response to her performance evaluation; (2) plaintiff's initial refusal to meet with two religious volunteers in order to repair their relationship; (3) plaintiff's disregard of her supervisor's instruction not to discuss an issue during a meeting with the religious volunteers which was particularly upsetting to one of the volunteers; and (4) plaintiff's act of defacing prayer pamphlets produced by one of the religious volunteer at his own expense.

## II. DISCOVERY

The parties have engaged in extensive written discovery and depositions. For instance, following the exchange of initial disclosures, plaintiff, on or about July 25, 2003, served her first set of twenty interrogatories and forty-four requests for production of documents. On or about September 15, 2003, defendants responded to these discovery requests. Subsequently, defendants, on or about October 10, 2003, and again on or about November 18, 2003, supplemented their written discovery responses at plaintiff's request. On or about March 12, 2004, plaintiff served her second set of interrogatories and requests for production of documents along with seventy requests for admissions. On or about April 12, 2004, defendants provided responses to plaintiff's second set of written discovery and requests for admissions. On or about June 14, 2004, defendants, and again at plaintiff's request, supplemented their responses to plaintiff's second set of written discovery and requests for admissions. In addition to voluminous written discovery, plaintiff has taken the depositions of nine witnesses, including Hospital officers, employees, physicians and volunteers, over the course of eleven days. As a result of the aforesaid discovery, plaintiff was in possession of information sufficient to permit her to make an informed decision within the discovery period as to whether to depose the five Hospital employees that are the subject of the instant motion.

The purported grounds for plaintiff's motion is that it was not until April 28, 2004 that she learned that her supervisor, Allison Breault ("Breault")(Vice President of Patient Care Services), personally spoke with Kathleen Clairmont ("Clairmont"), Leigh Johnson ("Johnson"), Teresa Carey ("Carey"), Shirley Dayton ("Dayton") and Teddi Moore ("Moore"), five Hospital employees, regarding their concerns with plaintiff's job performance. Specifically, their concern that plaintiff did not respect their personal space and made them uncomfortable; and that due to these concerns they were uncomfortable calling upon her to consult with their patients. The following chronology demonstrates, however, that during the early stages of discovery plaintiff was on notice of the identities of the above employees, the nature of their concerns regarding her performance, and that the employees' concerns had been communicated to Breault and were a factor in the decision to extend plaintiff's probationary employment period.

On or about October 10, 2003, defendants produced a copy of a written statement prepared by Hospital employee Dawn Noel ("Noel") concerning her interactions with plaintiff during her employment as Staff Chaplain. (Attached hereto as Exhibit A). Appended to Noel's statement is an e-mail message from Noel to Marty Levine ("Levine")(Vice President of Human Resources), which provides: "There were continual complaints for [sic] the RNs and Teddi on 4th floor Shea . . . ." Noel's written statement provides: "It was not long after [plaintiff] began working here that nursing staff began to come up to me to express negative concerns regarding her behavior . . . . Some of the unsolicited issues had to do with her interaction with patients and lack of respect for boundary/space especially with staff."

Breault, during her October 15, 2003 deposition, testified that approximately five Hospital staff approached her to discuss their concerns regarding plaintiff's performance. Specifically, Hospital staff reported that plaintiff lacked appropriate personal space, got too close

4

to them, hovered over them, and made them uncomfortable. Breault further testified that the "perceptions among the staff affected their comfort level with access of the director of pastoral care to provide care to their patients. Ultimately, that affects [plaintiff's] ability to do her job if the staff are not comfortable contacting her, so it therefore is an issue ultimately in her ability to successfully complete her responsibilities." (See Exhibit C to Plaintiff's Memorandum of Law, at pp. 138-139).

On or about November 18, 2003, defendants specifically identified Clairmont, Johnson, Carey, Dayton and Moore as individuals with relevant information. (See Exhibit D to Plaintiff's Memorandum of Law, at Interrogatory #6). Moreover, defendants produced copies of addendums to written statements from Noel and Vincent Stephens, M.D. ("Dr. Stephens"), which had been previously produced on or about October 10, 2003. (Attached hereto as Exhibit B). Noel, in her amended statement, identified Clairmont, Johnson, Carey, Dayton and Moore as individuals who had expressed concern about plaintiff's "lack of respect for boundary/space." Likewise, Dr. Stephens identified Clairmont, Carey and Moore as individuals who had made negative statements regarding plaintiff's performance. Furthermore, defendants disclosed that, in or about July 2001, Noel and Dr. Stephens first reported the concerns expressed to them by the foregoing Hospital staff with respect to plaintiff's lack of respect for personal space to Breault. (See Exhibit D to Plaintiff's Memorandum of Law, at Interrogatory #4).

During her November 25, 2003 deposition, Hospital employee Robin Begansky ("Begansky") identified Clairmont and Carey as Hospital staff that were uncomfortable with plaintiff and that had reported that plaintiff "got in [their] face" and did not "know when to back off." (Attached hereto as Exhibit C, at pp. 33-35).

5

On or about April 12, 2004, defendants reiterated that, beginning in or about late May 2001 or early June 2001 and continuing to September 4, 2001, Clairmont, Johnson, Carey, Dayton and Moore reported to Noel and Dr. Stephens concerning plaintiff's lack of respect for personal space and that Noel and Dr. Stephens, in turn, communicated the concerns to Breault in or about July 2001. (See Exhibit E to Plaintiff's Memorandum of Law, at Interrogatory #2).

On April 28, 2004, Breault testified that in July or August 2001, and prior to extending plaintiff's probationary employment period, she personally spoke with Clairmont, Johnson, Carey, Dayton and Moore concerning plaintiff. Breault further testified, consistent with her earlier testimony, that these employees reported that plaintiff "didn't have any personal space," that she made them uncomfortable, and that she got in their faces. Breault testified that some of these employees indicated that because of the foregoing concerns, they were uncomfortable calling upon her to consult with their patients. (See Exhibit F to Plaintiff's Memorandum of Law).

On or about June 14, 2004, defendants served their Supplemental Responses to Plaintiff's Second Set of Interrogatories and Requests for Production.[1] (Attached hereto as Exhibit D). These responses are consistent with Breault's earlier testimony and provide that, in or about July and/or August 2001, Clairmont, Johnson, Carey and Moore spoke with Breault regarding their concerns with plaintiff. Specifically, the foregoing employees reported that they were "uncomfortable" with plaintiff, that she did not respect their "personal space," and that she "gets right in [their] face." Some of these employees also reported that because of their concerns they

---

[1] Plaintiff incorrectly states that defendants provided supplemental discovery responses on or about May 27, 2004. On that date, defendants' counsel provided plaintiff's counsel with a *draft* version of defendants' supplemental discovery responses via e-mail with the understanding that they were a "work in progress" and had not been reviewed by defendants. Defendants' counsel stated that the *draft* responses were being provided to plaintiff's counsel in order to expedite a conference call scheduled for the following week and intended to address the outstanding discover issues.

were uncomfortable calling upon plaintiff to consult with their patients. Breault also met with the above employees in October 2003 during which time they reiterated the comments they had made in 2001. In addition, one employee made the additional comment that plaintiff had touched her and expressed the opinion that plaintiff did not know her well enough to do so.

### III. LAW AND ARGUMENT

In accordance with the Court's scheduling order in this case, discovery ended on April 30, 2004. Pursuant to Federal Rule of Civil Procedure 16(b) and Local Rule 16(b), a scheduling order may be modified only for "good cause." Local Rule 16(b) further provides that the "good cause standard requires a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." A court may grant permission to amend a scheduling order when "the interests of justice make such a course desirable." *Madison Consultants v. Federal Deposit Insurance Corp.*, 710 F.2d 57, 62 n.3 (2d Cir. 1983)(Internal quotation marks omitted). "In making this determination, the court must consider any prejudice to the non-movant and balance the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements." *Travelers Indem. Co. of Connecticut v. Losco Group, Inc.*, 150 F.Supp.2d 556, 561 (S.D.N.Y. 2001)(Internal quotation marks omitted). "The focus of an inquiry into good cause is on the [requesting] party's reasons for the [schedule] modification." *Julian v. Equifax Check Services, Inc.*, 178 F.R.D. 10, 16 (D.Conn. 1998)(Alterations in original; internal quotation marks omitted).

Plaintiff cannot come close to establishing the requisite "good cause" for modification of the scheduling order. As the previously discussed chronology of the discovery process in this

case makes apparent, plaintiff's contention that "new" and "critical" information was not disclosed until the close of discovery is disingenuous and does not warrant the re-opening of discovery in order to permit the depositions of five non-party Hospital employees with limited knowledge of the facts and circumstances of plaintiff's employment with the Hospital. Plaintiff argues that she is entitled to this additional discovery because it was not until Breault's April 28, 2004 deposition that she first learned that Breault had spoken *personally* with Clairmont, Johnson, Carey, Dayton and Moore regarding their concerns with plaintiff's performance. Specifically, their concerns that Plaintiff did not respect their personal space, made them uncomfortable, got in their faces; and that because of these concerns they were uncomfortable calling upon her to consult with their patients. In October 2003, however, and during the early stages of discovery, Breault testified that she had met with approximately five Hospital employees who reported that plaintiff lacked appropriate personal space, got too close to them, made them uncomfortable, and that they were uncomfortable contacting her. Although Breault was unable to recall the specific identities of the employees who made these comments, subsequent discovery is illuminating. First, by way of defendants' November 18, 2003 Second Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production, plaintiff was on notice that Clairmont, Johnson, Carey, Dayton and Moore had voiced their concerns regarding her lack of respect for their personal space to Hospital employee Noel and/or to Dr. Stephens and that Noel and Dr. Stephens had communicated these concerns to Breault. Second, in November 2003, Hospital employee Begansky testified that Clairmont and Carey had reported that plaintiff made them uncomfortable and that she got in their face and did not know when to back off. Third, defendants, in their April 12, 2004 Responses to Plaintiff's Second Set of Interrogatories and Requests for Production, reiterated the concerns expressed by Clairmont,

8

Johnson, Carey Dayton and Moore to Noel and/or Dr. Stephens regarding plaintiff and Noel and Dr. Stephens communication of those concerns to Breault.

Accordingly, it is undisputed that plaintiff was on notice of the identities of each of the five Hospital employees she now seeks to depose and the general nature of their expected testimony as early as November 2003. *See Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)(denying motion for leave to modify scheduling order to file second amended answer where substance of "new" claim was known when first amended answer was filed); *Harris v. Computer Associates Intern., Inc.*, 204 F.R.D. 44, 45-46 (E.D.N.Y. 2001)(denying motion to reopen discovery to allow additional deposition where there was ample opportunity to depose witness during discovery period). Indeed, the only information of which plaintiff was arguably unaware prior to April 28, 2004, is that the employees *personally* communicated their concerns to Breault and that one or more of them may have expressed the opinion that they were uncomfortable calling upon plaintiff to consult with their patients. Nevertheless, plaintiff *was* aware that the concerns of the employees had been communicated to Breault (albeit through intermediaries) and contributed to the decision to extend plaintiff's probationary employment period. In fact, plaintiff questioned Breault at length over the course of two days of depositions concerning the substance of the concerns expressed by Hospital staff about plaintiff's performance as well as their effect upon the decision to extend plaintiff's probationary period.

## IV.   CONCLUSION

For all of the foregoing reasons, defendants respectfully request that plaintiff's motion for permission to re-open discovery in order to allow for the depositions of five Hospital employees whose identities and relevant knowledge have been known for many months and who are

expected to provide testimony cumulative of that already provided by at least one other witness be denied.

                DEFENDANTS
                WINDHAM COMMUNITY MEMORIAL
                HOSPITAL and
                HATCH HOSPITAL CORPORATION

By: *William J. Albinger* (signature)
     Stephen B. Harris, ct13125
     William J. Albinger, ct18861
     Wiggin & Dana LLP
     One Century Tower
     P.O. Box 1832
     New Haven, CT 06508-1832
     (203) 498-4400
     Their Attorneys

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of June, 2004, a copy of the foregoing has been mailed, postage prepaid, to the following:

>Mary E. Kelly, Esq.
>Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
>557 Prospect Avenue
>Hartford, CT  06105-2922

_____
William J. Albinger

\4033\89\473876.1