UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BARBARA CAMPBELL | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:03 CV 0520 (JCH) |
| V. | : | |
| WINDHAM COMMUNITY HOSPITAL, INC. | : | |
| HATCH HOSPITAL CORP. | : | |
| Defendants. | : | JULY 6, 2004 |

**PLAINTIFF'S REPLY TO DEFENDANT'S
JUNE 28, 2004 MEMORANDUM OF LAW**

I.    Introduction

On June 16, 2004, the plaintiff Barbara Campbell, (hereinafter "the plaintiff" or "Campbell") moved for permission, pursuant to Fed.R.Civ.P. 16(b), and Local Rule 16, to modify the scheduling order so as to allow the plaintiff to take short depositions of Kathleen Clairmont, Leigh Johnson, Teresa Carey, Shirley Dayton and Teddi Moore. In so doing, the plaintiff explained that beginning in July 2003, the plaintiff sought detailed information about the alleged complaints made by her co-workers, and further explained that it was not until the close of discovery that the defendant disclosed that one or more of these witnesses might have complained about being touched by the plaintiff and/or about a reluctance to work with the plaintiff. The plaintiff explained that the defendant's late disclosure of this relevant information constitutes good cause for the reopening of discovery so as to permit short depositions of these witnesses as to the nature of their complaints about the plaintiff.

On June 28, 2004, the defendant filed a memorandum in opposition to the motion for permission to take discovery out of time.   In the memorandum the defendant contends that  no good cause has been shown, claiming that as early as November 2003  the plaintiff was on notice of the identities of the above employees, the nature of their concerns regarding her performance,  that the employees concerns had been communicated to Breault and that the employees complaints  were a factor in the decision to extend plaintiff's probationary period.  (See Defendant's Memorandum at 1-2, 4).   The defendant also contends that discovery should not be re-opened, claiming that the testimony would be duplicative and not directly relevant.   (See Defendant's Memorandum at 4).    As is explained below, these claims are meritless and the plaintiff writes briefly to address these issues.

II.     The Facts

In the instant case, the defendant has claimed that the plaintiff had significant performance problems which justified extending her probation, and ultimately justified terminating her.   Among the performance problems identified by the defendant were alleged difficulties getting along with patients, staff and area clergy.    The plaintiff contends that these alleged problems are exaggerated and/or were the result of discriminatory animus.

In order to avoid taking unnecessary depositions, the plaintiff served detailed written discovery on the defendant seeking identification of each person who had allegedly complained about the plaintiff, and the details of each such complaint.  (See

Exhibits A and D to Plaintiff's June 14, 2004 Memorandum).[1]  The plaintiff also took nine depositions, including depositions of the decisionmakers, the depositions of several persons identified by the defendant as having complained about the plaintiff, and the depositions of several persons identified by the defendant as having received complaints about the plaintiff.

In her October 15, 2003 deposition, Allison Breault, the plaintiff's supervisor, testified that approximately five employees had complained about the plaintiff to her, allegedly reporting that they were uncomfortable working with the plaintiff.  (See Ex. C to Plaintiff's June 16th Memorandum at 138-139)  Breault admitted to relying on these complaints in making decisions.  Id.  However, Breault testified that she was unable to recall the identities of the staff members who made these complaints.  Id.

On November 18th, 2003, the defendant identified Clairmont, Johnson, Carey, Dayton and Moore as persons with relevant knowledge.  The defendant explained that these individuals had complained to Vincent Stephens and/or to Dawn Noel about, "plaintiff's lack of respect for the personal space of patient's and hospital staff".[2] (See Exhibit D to Plaintiff's June 14, 2004 Memorandum)  The defendant did not suggest that these individuals complained to Breault or that they ever indicated that they were reluctant to work with the plaintiff.  Id.

Plaintiff's counsel deposed both Noel and Stephens to ask about the alleged

---

[1] The plaintiff also served a set of Requests for Admission in order to narrow the issues in dispute.

[2] The defendant further reported that Ms. Moore allegedly informed Noel of an incident where the plaintiff allegedly eavesdropped on a conversation.

complaints.  Stephens testified that Clairmont, Johnson, Carey, Dayton and/or Moore made negative gestures or faces when he asked about the plaintiff.  (Deposition testimony of Dr. Stephens at 18-22, attached hereto as Exhibit A)  He also recalled a comment about the plaintiff's "unusual" way of ministering, and a comment about the plaintiff, "praying to the moon and the stars".  (Ex. A at 18-22)   Stephen further testified that at some point somebody complained to him about the plaintiff allegedly failing to respect the clinician's boundaries, but explained he could not recall the source of that complaint.  (Ex. A at 22-23)

Dawn Noel testified that Moore complained about observing the plaintiff allegedly listening to a clinician conversation.  (Deposition testimony of Dawn Noel attached hereto as Exhibit B at 66-67)[3]   She also recalled a complaint from a nurse that the plaintiff's praying was "too new age".  (Exhibit B at 38-40)   Noel could not recall the specifics of any other complaints from these individuals, explaining that, "they went in one ear and out the other".   (Ex. B at 38, 69-70)[4]

Thus, the testimony of  Stephens and  Noel did not indicate that Clairmont, Johnson, Carey, Dayton and/or  Moore had complained of being reluctant to work with

---

[3] Ms. Noel testified that she did not report this complaint to Ms. Breault.  (Ex. B at 68)

[4] Co-worker Robin Begansky also mentioned having heard complaints from Clairmont and Carey.  She testified that, "it was nothing bad about patients, it was just that she didn't know how to leave you in your own personal space".  (Deposition testimony of Robin Begansky attached hereto as Exhibit C at at 35).  Begansky noted that it was not a matter of the plaintiff arguing with people, or refusing to leave when asked. (Ex. C. at 39-40) Instead, Begansky explained that people were apparently uncomfortable with Ms. Campbell standing too close to them.  (Ex. C. at 39-40)  When asked to describe the complained of behavior, Begansky testified that the plaintiff would sometimes stand within two feet of her.  (Ex. C at 38-39).

4

the plaintiff. Furthermore, there was no evidence that Stephens or Noel ever reported to Breault any unwillingness by Clairmont, Johnson, Carey, Dayton and/or Moore to work with the plaintiff. Indeed, Breault testified that Stephens and/or Noel passed on only general complaints about hovering and personal space. (Deposition of Allison Breault attached hereto as exhibit D at 165, 182-183, 261). Based on the defendant's discovery responses and the testimony of Noel, Breault and Stephens, plaintiff's counsel reasonably believed that Clairmont, Johnson, Carey, Dayton and/or Moore had expressed only minor complaints about the plaintiff. Accordingly, plaintiff's counsel decided not to depose them.

It was not until the close of discovery that the defendant disclosed that these five employees had allegedly told Ms. Breault that they did not want to work with the plaintiff or call her to consult with their patients. In addition, for the first time the plaintiff learned that one or more of these individuals had allegedly complained to Ms. Breault that the plaintiff had touched her. The plaintiff sought permission to take short depositions of these witnesses limited to their complaints about the plaintiff and any communication of those complaints to the defendant. After the defendant indicated that it would not agree, the plaintiff filed the instant motion.[5]

III. Argument

As was explained in Plaintiff's June 16, 2004 Memorandum, a motion to reopen should be granted when doing so is in the interests of justice. D. Conn. Local Rule of

---

[5] In response to a question from plaintiff's counsel, defendant's counsel also indicated that the defendant was reserving its right to present evidence at trial of the alleged complaints of Clairmont, Johnson, Carey, Dayton and Moore.

5

Civil Procedure 16.  A court, in determining whether or not there is good cause to grant the motion, should consider the past conduct and diligence of the parties, the prior knowledge of the parties, any prejudice to the opposing party and whether the granting of the motion would postpone the trial ready date.  <u>Laguna v. American Export Isbrandtsen Lines, Inc.,</u> 439 F.2d 97, (2nd. Cir. 1971).

In the present case, the defendant apparently concedes that it will not suffer any prejudice if the plaintiff is permitted to reopen discovery for this limited purpose. Moreover, it is clear that the motion need not delay the trial ready date.[6]  The defendant, however, claims that the motion should be denied because the failure to depose the witness was the result of a lack of diligence on the part of the plaintiff.

A moving party's diligence, or lack thereof, is often a critical part of the Court's determination with respect to good cause.  As the Second Circuit Court of Appeals has explained,

> [t]here is, of course, no litmus test to determine the exact amount of time needed for discovery in a particular case.  Claims of a need for more discovery by a party who has diligently used the time available, however, should be given more favorable consideration than claims by one who has allowed months to pass unused.  Moreover, when alerted to a forthcoming motion for summary judgement, a party wanting more time for discovery should seek, through negotiation with the other party and, if necessary, thorough application to the district court, an appropriate discovery schedule.  A party who fails both to use the time available and takes no steps to seek more time until after a summary judgement motion has been filed need not be allowed more time for discovery absent a

---

[6] Although the plaintiff does not object to any extension of time, the plaintiff does not believe it is necessary to postpone the pending motions for summary judgement. The defendant, who has access to the witnesses, would not need to wait for this court's ruling in order to file its motion.   The plaintiff believes that all five depositions can be taken in one day, and therefore does not anticipate that the taking of such depositions would require any extension of time to respond to the defendant's motion.

strong showing of need.

Burlington Coat Factory Warehouse Corp. v. Espirit de Corp., 769 F.2d. 919, 927-928 (2nd. Cir. 1985).  See Also:  Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp. , 215 FRD 100, 104-105 (SDNY 2003)(amendment denied where defendant has offered no explanation for a failure to act); Yrityspankki Skop Oyj v. Delta Funding Corp., 1999 WL 1018048, (S.D.N.Y 1999)(noting that party must be able to show what efforts the defendant has made during discovery to obtain this information and why it was unsuccessful in doing so).

However, despite the defendant's claims, this is not a case in which the plaintiff has allowed months to pass unused, or has otherwise exhibited a dilatory approach to discovery.  The plaintiff served two sets of interrogatories in an attempt to identify each person who complained and the details of each complaint, and engaged in a number of discussions with opposing counsel about the defendant's objections and responses.[7] The plaintiff took nine depositions to question various staff members and management officials as to the complaints.   The plaintiff also filed requests for admissions, and again engaged in a number of  discussions with opposing counsel about the defendant's objections and responses.  Thus, the plaintiff was clearly diligent in seeking detailed  information about the complaints made by Clairmont, Johnson, Carey, Dayton and  Moore.

Nor is this a case in which the plaintiff was  aware of the relevance of the information held by  Clairmont, Johnson, Carey, Dayton and  Moore and inexplicably

---

[7]These discussions resulted in the defendant's filing of several supplemental discovery responses to more completely answer the interrogatories.

failed to depose the witnesses. The defendant suggests that the plaintiff was aware of the "general nature" of the complaints. This is not the case. The defendant initially explained only that claimant Johnson, Carey, Dayton and/or Moore complained of personal space and hovering issues. It was not until the close of discovery that the defendant disclosed that these witnesses had also allegedly expressed reluctance to work with the plaintiff, and had made allegations about improper touching. Had the plaintiff been aware of these additional allegations early in discovery, the plaintiff would have taken the depositions at that time[8]. Since it was the defendant's late disclosure and not the plaintiff's lack of diligence that has necessitated the instant motion, the motion to modify the scheduling order should be granted.

The defendant also objects to the granting of this motion, claiming that evidence of the complaint, is not directly relevant to any claims. However, the defendant has reserved its right to produce evidence of these alleged complaints at trial. If the defendant wishes to reserve the right to use the information at trial, it cannot simultaneously claim that the plaintiff should be denied the right to depose these

---

[8]The defendant appears to suggest that the plaintiff should have been able to figure out that the five or so employees identified by Breault in her October deposition were the same individuals identified by the defendant as having complained to Stephens and Noel. However, the rules of discovery do not place this burden on the plaintiff. Instead, the defendant is required to fully respond to relevant interrogatory requests. The defendant was aware that Clairmont, Johnson, Carey, Dayton and Moore allegedly complained to Ms. Breault about an unwillingness to work with the plaintiff, and about an incident of touching. In fact, the defendant apparently met with these employees in October 2003 and discussed these allegations. Despite this, the defendant failed to identify Clairmont, Johnson, Carey, Dayton and Moore as having made these alleged complaints. Given the defendant's knowledge, the interrogatory responses verified by Breault, were clearly incomplete. This, and not a lack of diligence on the part of plaintiff's counsel is the reason for the instant motion.

potential witnesses on the grounds that their testimony would be irrelevant.

Finally, the defendant objects to the depositions, claiming that the testimony would be duplicative. This, of course, is possible. However, it is also possible that these witnesses will contradict the testimony of Ms. Breault or may offer details that have not yet been disclosed. The fact that the testimony may be duplicative is not sufficient cause to deny the plaintiff an opportunity to cross-examine the individuals who have direct knowledge of the their interaction with the plaintiff, and of the complaints that they made.

IV.     Conclusion

For the reasons set out above, and in the Plaintiff's June 16th Memorandum, the plaintiff respectfully requests that the scheduling order in the above-referenced matter be modified so as to allow the plaintiff to take short depositions of Kathleen Clairmont, Leigh Johnson, Teresa Carey, Shirley Dayton and Teddi Moore limited to any criticism each had of the plaintiff and the circumstances surrounding any communication of this criticism to the defendant.

                                        Respectfully submitted,

                                        THE PLAINTIFF

                                        By:   _____
                                              Mary E. Kelly  ct 07419
                                              Livingston, Adler, Pulda,
                                              Meiklejohn & Kelly, P.C.
                                              557 Prospect Avenue
                                              Hartford, CT  06105-2922
                                              (860) 233-9821

## CERTIFICATION OF SERVICE

      This is to certify that a copy of the foregoing Plaintiff's Reply to Defendant's June 28, 2004 Memorandum of Law has been sent by first-class, postage pre-paid mail on this 6th day of July 2004 to the following counsel of record:

Stephen B. Harris  
William J. Albinger  
Wiggin & Dana LLP  
One Century Tower  
265 Church Street  
New Haven, CT 06510-7001

_____  
Mary E. Kelly